UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL R. FRANZEN,

        Plaintiff,

v.                                       Case No. 26-CV-263

MELISSA WENDT-TROCHINSKI,
KELLY PELKY, ANGEL HOFFMAN, and
MORGAN MALCHOW,

        Defendants.

## SCREENING ORDER

    Plaintiff Daniel Franzen, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motions for leave to proceed without prepayment of the filing fee and to appoint counsel and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

    Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). On February 25, 2026, Plaintiff paid the full $405.00 filing fee. Accordingly, Plaintiff's motion for leave to proceed without prepayment of the filing fee will be denied as moot.

### SCREENING OF THE COMPLAINT

    The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to the complaint, on August 12, 2025, Plaintiff complained to Oshkosh Correctional Institution's Health Services Unit (HSU) about a severe headache and numbness in

his left arm that spanned from his elbow to his fingertips. On August 18, 2025, Plaintiff complained to HSU again about his headache and the numbness in his left arm. The next day, Plaintiff told HSU that he had severe pain in the front and back of his head with pressure. On August 20, 2025, Plaintiff complained of severe pressure and pain in his head and that he experienced stroke-like symptoms. Plaintiff was taken to Ascension Northeast Wisconsin Mercy Hospital Emergency Department in Oshkosh, Wisconsin, where he was found to have a tumor on the back of his brain. On August 22, 2025, Plaintiff started stuttering. On August 24, 2025, Plaintiff's stuttering worsened, he had severe weakness on his left side, and the left side of his face started drooping. Plaintiff was taken to HSU. On August 26, 2025, Plaintiff had severe chest pain and pressure in his head. HSU checked on him and called an ambulance. Upon Plaintiff's return to Oshkosh Correctional Institution, Plaintiff's right thumb went numb. On August 30, 2025, Plaintiff's entire hand went numb, he was severely weak in both arms, his stuttering worsened, and he had bad chest pains. HSU was called, and HSU called an ambulance. Plaintiff was misdiagnosed with Hemiplegic Migraines. Dkt. No. 1 at 2.

On September 5, 2025, Plaintiff had severe chest and head pain, nausea, numbness on his left side, weakness, and memory loss. Although he was taken to the hospital by ambulance, he had not yet seen a specialist for his condition. On September 13, 2025, Plaintiff had chest pain and weakness on his right side. He was taken to HSU and then to the hospital. Two days later, Plaintiff had pressure in his head with a burning sensation. He blacked out and hit the back of his head when he fell. Plaintiff was again taken to the hospital. On September 17, 2025, Plaintiff had chest pain, had severe burning and pressure in his head, and blacked out. HSU was called, and Nurse Morgan Malchow told Plaintiff to lay down and rest. Nurse Malchow did not evaluate Plaintiff. The next day, Plaintiff blacked out and, when he came to, he had severe dizziness, pain,

and tingles on his right side from his shoulder to his toes. On September 23, 2025, Plaintiff blacked out, and HSU was called. Plaintiff was told his tumor was not "urgent," despite Nurse Hope Baginski stating Plaintiff needed more tests. Advance Care Provider/Nurse Practitioner Melissa Wendt-Trochinski "did nothing" for Plaintiff. On September 25, 2025, Plaintiff had severe head pressure with dizziness, his right leg would not move, and he ended up falling. HSU lost Plaintiff's medication on that day. On September 28, 2025, Plaintiff was sitting outside and started feeling weak. He passed out three times. HSU was called, and Nurse Malchow took Plaintiff's blood pressure and brought him back to his cell. Nurse Malchow told Plaintiff to stay inside if the sun was a trigger for him but did nothing else for Plaintiff. *Id.* at 3–4.

On October 3, 2025, Plaintiff lost vision in both eyes. Plaintiff's Housing Officer called HSU. HSU staff told Plaintiff to put in a blue slip and that staff would notify optical. By October 7, 2025, Plaintiff's vision returned in his left eye, but his right eye remains blurry to this day. On October 7, 2025, Plaintiff was diagnosed with an abnormal enhancement on the left vertical nodule of his brain, a brain tumor. *Id.* at 4.

On October 18, 2025, Plaintiff went to HSU for a scheduled visit and asked about his test results and restriction renewal. HSU staff told Plaintiff that he could not have the results from Plaintiff's October 7, 2025, MRI because HSU lost them. On October 30, 2025, Plaintiff met with APNP Wendt-Trochinski for a file review. APNP Wendt-Trochinski updated Plaintiff's symptoms, but Plaintiff noticed his file was "mixed up and missing a lot of pages." APNP Wendt-Trochinski indicated that Plaintiff did not have an appointment scheduled with Neurology. The next day, Plaintiff felt weak and dizzy, and he fell on the floor. HSU was called, and Plaintiff went to the hospital. *Id.* at 4.

On November 20, 2025, Plaintiff met with APNP Wendt-Trochinski to discuss moving Plaintiff from Unit K to HSU's Short-Term Care Unit. Later that day, Plaintiff met with APNP Wendt-Trochinski, HSU Manager Kelly Pelky, HSU Assistant Manager Angel Hoffman, and Unit K Manager Ruck. Plaintiff asserts that APNP Wendt-Trochinski, HSU Manager Pelky, and HSU Assistant Manager Hoffman told Plaintiff that his tumor is asymptomatic, even though Plaintiff has confusion, weakness, vision loss in his right eye, and hearing loss in his right ear; developed a stutter; and walks with a walker. He alleges that APNP Wendt-Trochinski refuses to order a biopsy for his brain tumor, provides a form of treatment that does not help Plaintiff, denies that his symptoms are caused by the tumor, and refuses to give Plaintiff his medication that was prescribed by a neurologist. *Id.* at 5. Plaintiff asserts that he told HSU Manager Pelky and HSU Assistant Manager Hoffman that APNP Wendt-Trochinski refuses to order a biopsy for his tumor, that her treatment is not working, and that the medication he receives is not helping, but they refused to do anything about it. The committee decided to move Plaintiff to Short-Term Care from November 20, 2025, to November 25, 2025. *Id.* at 4.

On December 4, 2025, Plaintiff had chest pain and fainted. HSU was called to the unit. Nurse Malchow told Plaintiff he passed out as a result of acid reflux and did nothing for him. *Id.* at 4–5. On February 14, 2026, Plaintiff's optometrist told Plaintiff that he has brain cancer and is permanently blind in his right eye. On February 17, 2026, Plaintiff was fitted for an eye patch for his right eye. *Id.* at 6. Plaintiff seeks monetary damages, proper treatment for his tumor, and a declaration that Defendants' acts violated his rights. *Id.* at 6–7.

## ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this

5

Case 1:26-cv-00263-BBC   Filed 03/06/26   Page 5 of 10   Document 8

deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs when they failed to properly treat his brain tumor and his related symptoms. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. *Cesal v. Moats*, 851 F.3d 714, 720–21 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To state a claim, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Id.* at 721 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836–38 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Based on the allegations contained in the complaint, Plaintiff may proceed on a deliberate indifference claim against APNP Melissa Wendt-Trochinski, HSU Manager Kelly Pelky, HSU Assistant Manager Angel Hoffman, and Nurse Morgan Malchow.

## MOTION TO APPOINT COUNSEL

Plaintiff filed a motion to appoint counsel on the basis that the issues in this case are complex, he suffers from memory loss and confusion, he has limited knowledge of the law, and he has been assisted by two inmates who will both be released by September 2026. In a civil case,

the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007)).

It appears that Plaintiff has satisfied the first prong of the standard. Nevertheless, the Court will deny Plaintiff's motion because he appears capable of representing himself during the early stages of this case. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

Nothing in Plaintiff's complaint or motion suggests that he is unable to participate in discovery and respond to a summary judgment motion. Plaintiff's claim that Defendants did not properly treat his brain tumor and his related symptoms are straightforward and will largely turn on his personal knowledge of how he was injured and how his requests for treatment were handled. Plaintiff's filings have been detailed and organized, suggesting that he understands his claim and

7

has the capacity to request relevant information in discovery and identify and present the material facts of his case at summary judgment.

To the extent Plaintiff is uncertain about how his case will proceed, he is encouraged to review the guide the Court will send along with this decision. This guide includes information, including a glossary of legal terms, that Plaintiff may find helpful. Once Defendants are served with Plaintiff's complaint, they will have sixty days to respond to the complaint. After Defendants respond, the Court will enter a scheduling order setting dates for the completion of discovery and the filing of dispositive motions. In the meantime, Plaintiff is encouraged to be patient.

For these reasons, the Court will deny Plaintiff's motion to appoint counsel. If new challenges arise that Plaintiff does not believe he can overcome, he may renew his motion. If he does so, he should describe in detail what challenges he is facing and what efforts he has made to overcome them.

## Conclusion

The Court finds that Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against APNP Melissa Wendt-Trochinski, HSU Manager Kelly Pelky, HSU Assistant Manager Angel Hoffman, and Nurse Morgan Malchow.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 6) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on APNP

Melissa Wendt-Trochinski, HSU Manager Kelly Pelky, HSU Assistant Manager Angel Hoffman, and Nurse Morgan Malchow.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin on March 6, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge